Good morning. May I proceed? Please. Good morning. Kevin Snyder for Appellant, New Harvest Christian Fellowship. May it please the Court. Unless the Court directs otherwise, I would like to focus my argument this morning on our loop is equal terms first and then follow with the substantial burden provision. Beginning with the Church's facial challenge, the Salinas Zoning Code specifically prohibits religious assembly on the ground floor as a category. This is problematic because a restriction must be based on neutral criteria without reference to religious categories or practices. The Salinas Zoning Code draws a distinction between entities based upon the protected characteristic of religion, and then they couple that with an imposition of a special disability on that basis. Now, it does not suffice for Salinas to point out that as compared to houses of worship, some secular businesses, here lodges and clubs, are subject to similar severe treatment. Rather, when Salinas created a favored class of entities or activities, it fell short of neutrality, and thus New Harvest has demonstrated a prima facie case of the exclusion of houses of worship in the Zoning Code. Now, our prima facie case is not merely based on the textual exclusion of religious assemblies on the ground floor, but also on the textual allowance for certain secular assemblies. In the subsection that follows the exclusion of religious assemblies on the ground floor, the Zoning Code allows for six assembly uses on the ground floor, dance, music, theater, comedy, cabaret, karaoke. So in sum, New Harvest's prima facie case is based on the textual exclusion of the religious and the textual inclusion of other types of favored assemblies. So are you making both a facial argument that there's a discrimination on the face, and then an as-applied argument with respect to specific comparator properties? Are you making both claims? We are, Your Honor. What is the applied argument? I see your facial argument, but I'm having trouble seeing any difference between that and what you say is the applied argument. Great, and I appreciate the question. Moving to the applied challenge, it's probably in the simplest of terms. We look to – we're looking at two things. What is actually present in the three-block zone at issue, and then what is permitted? So as applied, the regulatory comparators as to what is present, there are four such. There are two cinemas, one multipurpose theater, and a children's theater. So those things are comparable assemblies in the three-block area. The next thing to look at in the as-applied challenge is what is permitted, though not extant, in the three-block area. And this is similar to what this court did in Centro Familiar Cristiano Buenos v. Yuma. And what is – in the three-block area, it's called the mixed-use zone. You could find a color-coded map at page 351 and 352 of the record, and it has a legend. It includes – in the zone in question, it includes commercial uses and public, semi-public uses. In this area, it allows nursing homes, hospitals, detention facilities. But there are no such properties actually on this three – there are no such uses on this three-block area, and no indication that they would allow those in there. I mean, they're not going to allow a cemetery to be put right on the three-block area. You're not claiming that, are you? We are not. Your Honor, what we are looking at is what is allowed, not is what is present for this second section of this. Let me explain. But why isn't that a facial – I understand that challenge, but why isn't that a facial challenge, not an as-applied challenge? I see – Your Honor, that's a point well taken. I think that could be a facial challenge. I think the difference is because it doesn't mention religion as a category, and so that, as such, it is – in my way of thinking, it seems to be better in the as-applied, but we do look at the text. And going back to the question of are these items – or I'm sorry, are these uses that are allowed, are they present or not, I think it is relevant, and this court believed it relevant in the central case. And the reason is, if you look at this court's opinion, they talked about – I think it was zoos, museums, jails, art galleries, and I don't believe any of those were actually present in the zone in Yuma. But the court says, but we look at those as comparators because they are allowed. Whether or not they will eventually be there, I mean, I think it's a point well taken that it's – With regard to the mixed-use issue, hospitals or cemeteries would still have to apply for a conditional-use permit under this current scheme, correct? That is correct. And so is that – regardless, it's hard to imagine that the city would grant that kind of conditional-use permit right there in that area, but is that in and of itself presenting a facial challenge, the fact that they could apply for a conditional-use permit, but yet the churches cannot? Well, Your Honor, the churches can apply for a conditional-use permit, but they can't on the ground floor. But as far as the facial challenge, I understand – I think I'm understanding the question because it does look at the tax – The ban is on religious assemblies on the ground floor, right? Correct, correct. That's correct. And I think that the reason why we look at things such as nursing homes, hospitals, government offices and the like that are allowed is because of the similarly situated comparator. The regulatory criteria is that the city wants a pedestrian-friendly, active vibe, which brings in commerce and tourism. And these items – nursing homes, jails and hospitals – don't meet that criteria. So that is why we believe it violates equal terms. Now, could it be deemed a facial challenge? I suppose so. But as it is, we believe in either event, whether it's facial or as applied, the church should prevail under both theories. Unless the court has further questions on equal terms, I'd like to move – I'd like to ask, what's the current status of the property? Yes, Your Honor, the property is in escrow. The church found – another church became open for sale in Salinas, and the church has a contingency escrow. So if it can sell the – if escrow closes on the Beverly building, then it will be able to close on its other property. And where is the other property? I don't have an address. I don't know. It's in Salinas somewhere. It's not covered by this three-block? No, Your Honor. As I understand it, so that moots your claims for declaratory and injunctive relief, but you still have claims for either nominal or actual damages, yes? That is correct. What are your actual damages? That would be a matter of crunching the numbers. I don't know what the cost of the sale is at this point, and so obviously you have issues of mitigation of damages and whatnot. I don't know what they're losing on that. If anything, I really don't know. As far as taxes, they've had to pay property taxes, and that would be the sale of the property is not part of those damages, but they are damages nonetheless. May I – with the court's permission, I'd like to just raise a couple of points as to substantial burden. There's – and I'll just give briefly two of them. One is that the district court erred by barring the concept of self-imposed burden from the Fourth and Seventh Circuits, and that is not the law emanating from this court, and it should not be adopted. And there are three reasons for this briefly. This circuit has decided a number of cases in which the religious institution purchased property knowing that the local government opposed it. And in some instances, they prohibited outright by zoning a religious property on the place that the church wanted to or temple wanted to assemble. Now, I know this was not directly addressed on point, but this court had no misgivings about rendering a favorable result to the religious litigants. Which cases do you have in mind when you say that? Yes, Cottonwood, Vietnamese Buddhist temple, International Church of the Four Square Gospel, Centro Familiar, Cristiano Buenos v. Yuma. Those are the four mentioned in our brief. Second, the affirmative defense of self-imposed burden tends to conflate substantial burden with the damages that flow from the injury. And the other problem with the self-imposed burden opinion is amply demonstrated by the district court in that it skips the statutory steps in the analysis. Under substantial burden provision, the first step is to determine if there is a substantial burden on the religious exercise of the institution. What showing did you make that the property up on, I guess it was on the highway up nine miles north, what burden, what showing did you make that that property was not an acceptable, reasonable alternative? Your Honor, the church didn't want the property. And so this is our premise as to that issue. You can say that, but if you're claiming that it's a substantial burden, I would think you'd have to make a showing as to why it was not acceptable, not just I don't want it. What explanation, what reasons, what evidence did you say that it wasn't a reasonable alternative? Well, the evidence was that they didn't want to make a U-turn on that, to that location on Highway 101. Now that, and I guess I would point essentially to the law on that. And that is it's not the rule in this circuit or any circuit that a church loses a substantial burden claim or fails to present it if there is a singular property within the jurisdiction available that they don't want to buy. And with that, I've got two minutes I would like to reserve if I may. Certainly. Thank you. Good morning, Your Honors. May it please the Court, my name is Gregory Aker. I am here today representing the defendant and appellee, the City of Salinas. I, too, like Mr. Snyder, will take the less than equal terms claim first and then go on to the substantial burden unless the Court prefers otherwise. So explain to me why the aerial theater, which is, you know, primarily used only on the weekends, is materially different from this church with respect to neutral zoning criteria. Your Honor, I think the answer to that question is in the standard that this Court has established for evaluating these equal terms claims. And that is the standard that was set forth in the Ninth Circuit's opinion in the Central Familiar case that Mr. Snyder mentioned. That standard is you look to determine whether the classification of religious versus non-religious uses is based upon accepted zoning criteria. That is the standard that was set forth by the Ninth Circuit in this case. There was no suggestion, and let me back up. Among the uses that the Ninth Circuit found to be accepted zoning criteria were uses that stimulate commercial activity, entertainment uses, uses that stimulate a pedestrian-friendly and active, vibrant downtown. There's no suggestion in the Ninth Circuit case, the Ninth Circuit standard in this case, as well as any other circuit that you go below, you go one level deeper to look into, all right, let's look at within this categorization of entertainment uses or retail or private clubs. There's no suggestion that you look into particular characteristics of those uses if they're properly— So what's the neutral criterion that distinguishes why you're allowing the aerial theater to be open primarily, open to the public only on weekends but not the church? The neutral criteria, Your Honor, is that the aerial theater, like all the other theaters that New Harvest mentions in this case, are entertainment-based. They are public-oriented activities. Saying it's entertainment-based, how is that facially neutral? Your point is, well, church is an entertainment, so isn't that exactly the discrimination this statute is aimed at? You pick a criterion that, by definition, a church can't meet, and then you say, well, you don't meet my neutral zoning criterion. No, Your Honor. The criterion is that, as established by the Ninth Circuit, it has to be accepted zoning criteria. The city cannot just pick any criteria out of its hat. Accepted discriminatory zoning criteria are what we've read this statute permits. So you can have a criterion that, by definition, excludes a church, and that's okay as even— And that's the proper construction of a statute that aims to exclude discrimination against churches. No. As this statute does, if it excludes not only churches but private membership clubs, as this does clubs, lodges, things like that, if it's based on accepted zoning criteria, and in this case, we introduced the testimony of our expert witness, as well as numerous studies in the city planning industry that show that uses like the theater you mentioned or restaurants or offices or any of those things that are public-oriented, they can be distinguished because they have all of the advantages that stimulate what the goals that the city is trying to achieve here, which is to have a pedestrian-friendly, active downtown. I'm troubled by this as well. Many theaters are not open to the public for most of the day. I'm not talking about movie theaters. I'm talking about playhouses typically are completely shut, are of no use in attracting tourists, whereas churches are, as in this case, typically open and often are of considerable interest to tourists. Where is the rationale for this distinction? Well, first of all, I would point out that the church in this case, as in many churches, is open only three times a week, Tuesday evenings, Friday evenings, and Sunday mornings. The rest of the time, it's closed. And another important consideration, and you can see this from the photographs we surveyed. Let's assume for purposes of, and Judge Rakoff, I hope I can amend your question just a little bit, and let's just assume that a community theater has the exact same hours as the church, same seating configuration. If they were to buy the very same building that's at issue, would they have to comply with the ground floor use limitation? No, they would not under this statute. And I would – several points on this. Number one, it's not just the hours that it's open and days of the week, but does it actually draw members of the public when it is open? And also, as our expert pointed out, these types of uses have wide open windows. There is activity inside. As the district court found here that taking the children's theater as an example, there are activities throughout the week, even though performances are only on, I think, Friday and Saturday evenings. But again, to get back to the Ninth Circuit. The record's actually fairly vague about whether the activities are going on at the Ariel Theater on the other days, and they don't seem – you didn't seem to make a record that they're materially different from the comparable activities of, you know, choir rehearsal and music rehearsal and other uses of the church during the week. And I didn't get the sense that the during-the-week activities at the Ariel Theater were open to the general public and inviting pedestrians in. Am I misleading the record? Well, first of all, no. The testimony we offered of the community development director, Ms. Hunter, did say that there was a lot of activity there going on throughout the week. But even if the doors are closed and the members of the public are not actually going in and out during that time period – and this is supported by our expert witness, very important for establishing a vibrant, active downtown – is that you have open windows with visible activity inside and not what are called dead zones, which is what is created by the church. But you didn't write the zoning criteria to say you have to have windows or you have to have this. What you said is no religious assemblies or certain other types of assemblies, which your brief is characterized as private assemblies, so that the theater is excluded from that. So I think you're confusing objectives with criteria. The objective in some vague, general sense is neutral, but the criterion seems not to be. I don't think so, Your Honor. With all due respect, again, I just have to come back to this Court's decision in Centro Familiar as well as the other cases we cited in our brief that talk about this accepted zoning criteria. It uses that exact word, criteria. And among those criteria, it lists shopping. It lists entertainment, the so-called street of fun. The Ninth Circuit in that case found that uses that the city allowed, such as prisons, for example, were not consistent with the street of fun. So the accepted zoning criteria here is businesses that are shown by objective evidence to stimulate commercial activity, pedestrian traffic. And those uses have included entertainment, such as theaters, offices, retail, all of those different uses. There's nothing in the Ninth Circuit opinion, as I said before, that you look within each category. If you can justify that category, in other words, justify distinguishing entertainment uses from private clubs or churches, things like that, that you have to look at each individual use within that criteria, within that category, to determine exactly whether they fit. How many hours are they open? What are the size of their windows? There's no suggestion that you go to that level of sort of micromanaging the city's decisions. As long as the city's categorization of these uses is supported by accepted zoning criteria, which in this case I think there is no dispute that we have submitted evidence, not only the objectives of the statute itself, which the Ninth Circuit found to be by itself insufficient, but we submitted expert testimony, numerous industry studies, which were supported by the amicus brief that was submitted, that these are legitimate criteria to distinguish between private clubs, churches, uses like that, that tend to be not open to the general public, have closed windows, as New Harvest does in this case, versus entertainment, retail, all of those pedestrian-friendly. So long as, under the central familiar decision, so long as the city can justify through this accepted zoning criteria that there's a reason, there's a very good reason to distinguish private clubs and other member-based uses from public-oriented uses, it passes the test under central familiar. And I think you can also look at the case law we cited. For example, we did cite the Riverside case out of the District of Minnesota. This is following up on central familiar that specifically held that movie theaters are not secular comparators to churches for the very reasons we've just discussed. Shopping, entertainment under the Point the Court to the River of Life decision from the Seventh Circuit. But in evaluating the comparator, I mean, do we just look at the criteria and the category in general, or do we take into account that this theater, which you say should generate all these things, doesn't in fact do that? It has many of the same features. It's open a limited amount, and during the week it's got some activities that are not open to the public. It doesn't fit the criteria. Are we supposed to consider that, take that into account, or no? I would say no, Your Honor, under the central familiar test. You do consider, does a theater or whatever use is involved fit within a category that has been shown by accepted zoning criteria to be distinguishable from other uses such as private clubs or member-based? If I understand your argument, the argument is if in some abstract way theaters can serve these various functions that the city is seeking, the fact theoretically, in my hypothetical, that not a single theater in this area, that's not true, but it's not hypothetical, not a single theater in the area has any of those characteristics, you would say that doesn't matter. It would still be appropriate zoning. Is that where your argument takes you? Your Honor, I think that is exactly what the Ninth Circuit is saying, that you don't go down another level in terms of detail and look at each individual use within that category of entertainment or retail. There also could be a retail store that's, for example, open two days a week. But the statute talks in terms of imposing or implementing, so we have to look at how you've actually carried it out. And when you carry it out and allow a theater to continue to operate that doesn't, in fact, contribute to the vibrancy and all the rest of it, and it's similarly situated, it's clear you're making a discrimination between two similarly situated things. Isn't that what the statute covers? Well, Your Honor, no. The law that we cited teaches that entertainment, pedestrian-friendly uses are not secular comparators to a private club or a church. And I do believe we submitted evidence that these uses, such as a children's theater, do contribute to vibrancy because when they are open, they draw members of the general public in large numbers. The mere fact, for example, that a church or a membership club is open to the general public doesn't answer the question, well, do these types of uses actually attract members of the public? And the evidence we submitted shows that even if these uses are only open for performances Friday and Saturday night or a movie theater is open a limited number of evenings, they attract large members of the general public, which contributes to the vibrancy of the downtown. And again, this is not just an arbitrary criteria that the city pulled out of a hat. It's based upon principles that have been established in the city planning industry as we've submitted in our evidence in the district court. And I would point out that New Harvest submitted no evidence to contradict that. They submitted no expert reports or any other objective evidence to show that the city's assumptions along these lines, along with many city planning experts, were somehow wrong. They accepted that evidence. You represent in the brief that cemeteries are permitted in the public, semi-public use classification areas of the city, but not on Main Street. To what extent does this public, semi-public classification overlap with mixed use? It does not, and I think New Harvest is just flat out. There's no overlap at all? Well, just to point out, the uses that New Harvest claims are allowed within the mixed use district are not allowed within the mixed use. If you look closely at the map of the city overlay in the downtown core, if you look along those three blocks of Main Street, and I think the exhibit we submitted has some green highlighting there, it's all the mixed use category. If you look at the definition of mixed use, and I'm looking at section 37-30.230, purpose of the mixed use district, it talks about the emphasis of non-residential uses is primarily locally oriented neighborhood serving retail service and office uses, or pedestrian oriented uses, or uses that emphasize retail, entertainment, and service activities. What New Harvest has done is they've taken the words commercial or public out of the mixed use statute and equated that with those same classifications with a capital letter commercial and a capital letter public, semi-public that are actually separate zoning districts from the mixed use. The cemetery, the correctional institutions, nursing homes are not allowed within the three blocks of Main Street. That's all we're talking about here. We're talking about those three blocks of Main Street on the ground floor. Even residential, although permitted within those three blocks, is allowed not on the ground floor, but on upper floors. Of course, the cemeteries do attract many members of the public. They just aren't allowed to leave. Well, the Ninth Circuit did talk about bars as being part of correctional institutions, but a different kind of bar. But New Harvest is just wrong here. Those uses are not permitted, and I think you can tell that by the fact that there are no cemeteries on those three blocks of Main Street. There are no government buildings. There are some outside of the three blocks of Main Street, but they're not allowed on the three blocks of Main Street. All right. Thank you, counsel. We've taken you over your time, but there's still time on rebuttal. Yes, and unless the panel has questions for me, I'd just like to raise a couple of points. First, as to the citation to Riverside from Minnesota, we believe that that is fundamentally a wrong case, in the sense that the court said that cinemas were not proper comparators to churches. We think that's wrong. We think the congressional record that's cited in our brief states that movie houses, lecture halls, were the type of evil that our loophole was passed to prevent. So we don't think that this court should adopt that position. As to Ariel Theater, the children's theater, I would just note that it is, in fact, a nonprofit entity, as is the church. And so I think it is a very good comparator. It is a good comparator in terms of the actual size of the seating space. It has a capacity of 289, and the church's plans were for 299. The other thing is that we believe that the regulatory criteria of revenue and entertainment is problematic, and the reason is that particularly for – well, for entertainment, it tends to skew towards essentially a content-based restriction where religious entities are the odd man out. As to revenue, it's not a compelling interest under substantial burden, so we believe that it cannot be an interest under equal terms, which is really a strict liability statute. And with that, I believe my time has expired. All right. Thank you very much, counsel, for both sides for your argument in this case. The matter is submitted. Thank you. Our last case on the calendar for argument this morning is Attain Specialty Insurance Company v. JKT Associates.
judges: Nguyen, Rakoff, Collins